Beverly Jo CLAUS and Aaron
Claus, Appellees,

v.

Richard Lee WHYLE and Beverly
Whyle, Appellants.

No. 93–922.

Supreme Court of Iowa.

Dec. 21, 1994.

Alfredo Parrish and Andrew J. Dunn of Parrish, Krudenier, Moss & Dunn, Des Moines, for appellants.

Jeane W. Pearson of Price, Breen & Pearson, Fort Dodge, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

McGIVERIN, Chief Justice.

This appeal involves issues regarding whether an adult daughter and her husband can recover damages against her parents for

sexual abuse and loss of consortium, without being barred by the relevant statutes of limitations and the loss of consortium requirement that the injuries to the daughter occur during the marriage.

We conclude that substantial evidence in this bench trial of a law action supports the trial court's finding that the father sexually abused his daughter on November 7, 1987. Also, like the trial court, we conclude that Iowa Code section 614.8A (1991) permitted the daughter to bring this action against her father for damages for her injuries caused by the sexual abuse she suffered on that date, and that the action against her mother should be dismissed.

However, we disagree with the trial court's determination that the discovery rule applies to the husband's loss of consortium claim and, therefore, conclude that her husband did not have a cause of action against the father for loss of spousal consortium.

## I. *Background facts and proceedings.*

A. *Family history.* Beverly Jo Claus (Beverly Jo) was born on March 5, 1974 to Richard and Beverly Whyle. Beverly Jo was Richard Whyle's (Richard's) eighth of eleven children.

Richard is a baker. He usually works from four o'clock in the morning until mid-afternoon and returns to work at nine-thirty in the evening to finish his duties. While Richard is home in the afternoon, he regularly takes a nap. When Beverly Jo lived at her parents' home, she took naps with him on different occasions.

Besides being a professional baker, Richard is also his family's "doctor." He delivered two of his own children. Additionally, before seeking the services of a professional doctor, he performed preliminary checks on any ailing members of his family.

Richard was a strict disciplinarian with his children. He expected them to mind and, when they did not, he used a belt on them. Richard admitted he had used excessive force on his children on some occasions.

Richard regularly argued with his wife Beverly. He often got mad and threw things. Due to such arguments, on several occasions Beverly took the children and left the home until tempers had cooled down.

In 1986, the Whyle family was investigated by the Department of Human Services. Richard told the investigator he had brushed his hands against Beverly Jo's breasts. Nothing came of the investigation.

By the time Beverly Jo was twelve or thirteen years old, her parents found her to be an obstreperous child. She would not mind them. She was working at a restaurant; but she would stay out past her working hours and not return home until four o'clock in the morning, the same time she knew her father went to work. Although she was getting "B"s and "C"s while she was in the eighth grade, her grades and attendance gradually went down until she dropped out of school during her first semester in the ninth grade.

Beverly Jo was an emotionally unstable teenager. She has tried to commit suicide several times, her first attempt occurring when she was thirteen years old. Around four o'clock in the morning on November 10, 1987, she took an overdose of Tylenol, causing her to vomit most of the day. Although Beverly Jo's parents were aware of her overdose and tried to get her to eat something, her mother did not take Beverly Jo to the hospital until around nine-thirty that evening.

While at the hospital, Beverly Jo told the intake nurse about an incident, a game Richard called "tit twister," which occurred while the Whyle family was on vacation. Beverly Jo complained that in 1983 while her family was traveling in their Suburban, her father had put his hand under her shirt and on her breasts. She said she felt humiliated and depressed and had told her mother about what had happened.

On November 12, 1987, Beverly Jo was transferred and admitted to the Mary Greeley Medical Center (Medical Center) in Ames. She was put in the child psychiatric ward. While there, she provided the personnel the same information about her father's "tit twister" game that she had provided before to the intake nurse at the first hospi-

tal. She also took another overdose of medicine.

When questioned by the doctors at the Medical Center, Richard denied any physical or sexual abuse of Beverly Jo. Although the hospital records indicate that Richard was going to file a Child in Need of Assistance (CHINA) petition, none was ever filed.

Beverly Jo was discharged and taken home from the Medical Center on February 2, 1988.

In 1989, Beverly Jo moved out of the family home and into an apartment. She met her husband Aaron at her apartment building in May or June of that year. Subsequently the couple moved in together and three weeks later, on September 20, 1989, were married in Missouri. At that time, Aaron was seventeen and Beverly Jo was fifteen years of age.

In the spring of 1990, Beverly Jo again attempted to take her life but was successfully treated at a hospital emergency room.

B. *Beverly Jo's flashback memories of sexual abuse.* In the fall of 1990, Aaron and Beverly Jo moved to Alabama. Around this time, Beverly Jo began having flashbacks about the physical and sexual abuse allegedly inflicted upon her by her father.

Beverly Jo had her first such flashback in the latter part of 1990 or the first part of 1991. During this flashback, she remembered an incident that took place in her bedroom on November 7, 1987 when she was thirteen years old. She remembered she was in her bed when Richard came into her room, placed his hand on her stomach, and inserted his finger in her vagina. She remembered she was awake at the time, although feigning sleep. She also remembered that the next morning there was blood on her sheets and that she was walking hunched over. As mentioned, three days after the date of this remembered sexual assault, Beverly Jo made her first suicide attempt. After this flashback, Beverly Jo told her husband about the remembered sexual abuse and about her father's past behavior of touching her breasts.

Thereafter, the couple moved back to Iowa. Beverly Jo testified that she has had several more flashbacks since their return to Iowa. First, in the summer of 1991, Beverly Jo claims she remembered that in 1982 her father burned her arm on a stove and forced her to disrobe and shower with him; she testified she recalled touching her father's inner thigh near his groin and crying.

During the next year, she asserts that she first recalled that in 1980 or 1981 her father forced her and her family to disrobe and to walk away from home through the woods to the road. That same year, she claims to have also recalled that from 1979 through 1989 she was required by her father to lie down in his bed and nap with him, and that he clamped his legs and arm around her with his hand under her shirt on her stomach and chest.

Finally, in 1993, Beverly Jo contends that she had several flashbacks, remembering that her father stripped her naked in his car at night while they were alone and that on two separate occasions during the years 1985 through 1987 her father touched her breasts in front of other family members.

Even before these flashbacks, since the beginning of Beverly Jo and Aaron's relationship, Aaron has not been able to touch certain places on Beverly Jo's body without her getting hysterical. Notwithstanding the fact that Beverly Jo and Aaron have two children, the oldest born August 24, 1991 and the youngest born November 8, 1992, they do not have what Aaron would consider a normal sexual relationship. Beverly Jo is unable to relax and have intimate relations with her husband. They do have sexual contact, but no foreplay or enjoyment in the process.

In addition, Beverly Jo has several other problems allegedly related to her being abused. She has difficulty sleeping, has bad dreams, and while awaking is combative and feels disoriented. When she is fully awake, she is tearful and unable to go back to sleep. She fears being home alone without her husband, as she feels her father will try to get back at her. She has mood swings and loses control of her temper with her flashbacks. Outside the home, she has problems making friends and cannot go to work. She feels others are looking at her, especially males who might have some sort of sexual ideas or

make references with sexual overtones towards her.

Beverly Jo has seen several therapists and doctors since she has started having the flashbacks of physical and sexual abuse. Dr. Scholten, who cared for Beverly Jo in 1987 after her first suicide attempt and later after her flashbacks, diagnosed her with a post-traumatic stress disorder. He determined the major cause of her post-traumatic stress disorder is the abuses which have been inflicted on her, with the family chaos being a contributing factor to her condition. He has recommended ongoing therapy with a qualified psychotherapist.

C. *Present suit.* On November 20, 1991, plaintiffs Beverly Jo and Aaron brought suit against both defendants Richard and Beverly, alleging assault and battery and physical and sexual abuse against Richard, and negligence in failing to prevent such abuse against Beverly. Aaron also claimed loss of consortium due to Richard's alleged abuse of Beverly Jo.

Defendants denied all of plaintiffs' claims and alleged that Beverly Jo's claims were barred by the statutes of limitations contained in Iowa code sections 614.1(2) and 614.8. Defendants also argued that Aaron could not recover for loss of consortium because any alleged injuries to Beverly Jo were not incident to their marriage.

The trial court found and concluded Richard committed an assault and battery on Beverly Jo in the form of sexual abuse when her father put his finger in her vagina on November 7, 1987. The court determined that the statute of limitations in Iowa Code section 614.8A permitted Beverly Jo to bring this action against her father for the sexual abuse he committed on that date. As to her 1983 breast touching claim against her father, the court found and concluded that the statutes of limitations contained in Iowa Code sections 614.1(2) and 614.8 barred the claim.

Regarding Beverly Jo's negligence claim against her mother, the trial court found that Beverly Jo failed to meet her burden of proof as it relates to Beverly and concluded that there was insufficient evidence that Beverly

knew about the alleged sexual abuse by her husband in Beverly Jo's bedroom.

Finally, the court concluded that Aaron was permitted to recover on a claim for loss of spousal consortium against Richard.

On the basis of these findings and conclusions, the trial court entered judgment for plaintiff Beverly Jo, awarding her $53,202 in actual damages against defendant Richard for her medical expenses, past and future pain and suffering, and emotional distress due to the November 7, 1987 incident. The court also awarded Beverly Jo $10,000 in punitive damages against Richard for the same intentional act. Regarding plaintiff Aaron's consortium claim, the court entered judgment for Aaron against Richard for $7,500. The court dismissed plaintiffs' petition against defendant Beverly.

From this trial court judgment, defendant Richard appealed. Plaintiffs cross-appealed against both defendants.

■■ II. *Scope of review.* We review a case tried at law in the district court on errors assigned. Iowa R.App.P. 4; *Atwood v. City of Des Moines,* 485 N.W.2d 657, 659 (Iowa 1992). We view the evidence in its light most favorable to the judgment, and we construe the findings of the trial court liberally to uphold, rather than defeat, the result reached. *DeYarman v. State,* 226 N.W.2d 26, 27 (Iowa 1975) (citations omitted). The trial court's findings of fact have the effect of a special verdict, Iowa R.App.P. 4, and are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1); *Cronk v. Iowa Power & Light Co.,* 258 Iowa 603, 606, 138 N.W.2d 843, 844 (1966).

■■ We are not, however, bound by the trial court's determinations of law, nor are we precluded from inquiry into whether the trial court's ultimate conclusions were materially affected by an improper conclusion of law. *Atwood,* 485 N.W.2d at 659.

III. *Battery and sexual abuse occurring on November 7, 1987.* Beverly Jo claims Richard committed a battery or unpermitted touching against her which constituted sexual abuse on November 7, 1987. The trial court agreed and concluded that the statute of limitations contained in Iowa Code section

614.8A permitted her to bring this action against her father. We conclude that substantial evidence supports the trial court's finding that Richard sexually abused Beverly Jo on November 7, 1987 and that by virtue of Iowa Code section 614.8A, the appropriate statute of limitations, she could bring this action against him for the injuries she has suffered due to that abuse.

■ A. *Sufficiency of the evidence.* Defendants argue that Beverly Jo's evidence offered to support her allegations of sexual abuse occurring on November 7, 1987 is neither substantial nor credible, and thus does not support the trial court's finding and conclusion that Richard committed a battery in the form of sexual abuse against Beverly Jo when he inserted his finger in her vagina on November 7, 1987.[1] We disagree.

■ Defendant's argument relies heavily on the fact that Beverly Jo's family provided some negative testimony regarding Beverly Jo's character and honesty, and that Beverly Jo's testimony itself contained some inconsistencies. However, the trier of fact, in this case the trial court, has the prerogative to determine which evidence is entitled to belief. *See DeYarman*, 226 N.W.2d at 29. Factual disputes depending heavily on credibility of witnesses are best resolved by the trial court, which has a better opportunity to evaluate credibility than do we. *See Capitol Sav. & Loan Ass'n v. First Financial Sav. & Loan Ass'n*, 364 N.W.2d 267, 271 (Iowa App. 1984). We will not weigh the evidence or the credibility of the witnesses. *Hackney v. Tower*, 260 Iowa 1101, 1105, 152 N.W.2d 257, 259 (1967).

■ Rather, our question is whether there was substantial evidence to support the findings of the trial court according to those witnesses whom the trial court believed. *DeYarman*, 226 N.W.2d at 29. Obviously, the trial court believed Beverly Jo's version of the events occurring on November 7, 1987. Her testimony provides substantial evidence

to support the trial court's finding battery in the form of sexual abuse on that date.

■ B. *Statute of limitations.* Richard argues that Iowa Code sections 614.1(2) (two-year limitations period) and 614.8 (one-year extension of two-year limitations period after termination of minority) are the proper statutes of limitations in this case. He contends that plaintiff had to bring her action by September 20, 1990, or within one year after she was emancipated by her marriage on September 20, 1989. The trial court, however, concluded that Iowa Code section 614.8A is the proper statute of limitations. We agree with the trial court.

Iowa Code section 614.8A provides as follows:

> An action for damages for injury suffered as a result of sexual abuse which occurred when the injured person was a child, but not discovered until after the injured person is of the age of majority, shall be brought within four years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the sexual abuse.

The incident Beverly Jo remembered occurring on November 7, 1987 constituted sexual abuse within the scope of Iowa Code section 614.8A. "Sexual abuse" is defined in Iowa Code section 709.1 in relevant part as any *sex act* between persons when one of the persons is a *child*.[2] Iowa Code § 709.1(3) (emphasis added). In this context, a child is any person under the age of fourteen years. *Id.* at 702.5; *Doe v. Cherwitz*, 518 N.W.2d 362, 364 (Iowa 1994) (holding that "child" for purposes of Iowa Code section 709.1(3) and thereby section 614.8A means someone under the age of fourteen as defined by section 702.5). Being only thirteen years of age on November 7, 1987, Beverly Jo was still a child as contemplated by section 614.8A when the incident occurred.

---

1. Defendant did not object at trial to the fact that Beverly Jo's testimony about the November 7, 1987 incident was based on a "flashback" Beverly Jo had approximately three years after the incident.

2. We have previously determined in *Doe v. Cherwitz*, 518 N.W.2d 362, 364 (Iowa 1994), that the term "sexual abuse" as used in section 614.8A is to be defined by the criminal code, specifically by section 709.1.

"Sex act" is defined in Iowa Code section 702.17 in relevant part as "any sexual contact between two or more persons by . . . contact between the finger or hand of one person and the genitalia or anus of another person." Richard's insertion of his finger into his child's vagina corresponds with this definition of "sex act" in section 702.17. Consequently, Richard's action on November 7, 1987 was "sexual abuse" as provided by section 614.8A.

 In addition to the November 1987 incident falling within the scope of section 614.8A, Beverly Jo's cause of action for such sexual abuse meets that statute of limitations' requirements. Beverly Jo remembered the November 7, 1987 abuse in a flashback which itself occurred in the latter part of 1990 or the first part of 1991. At this time, Beverly Jo had attained her majority by virtue of her marriage to Aaron on September 20, 1989. *See* Iowa Code § 599.1 ("[A]ll minors attain their majority by marriage."). Thus, although the sexual abuse happened when Beverly Jo was thirteen, she did not "discover" the abuse until she was a legal adult. Shortly thereafter, specifically on November 20, 1991, she commenced the present action against her parents. As section 614.8A allows an adult to bring an action up until four years after discovery of sexual abuse, Beverly Jo is well within the statute of limitations of section 614.8A relative to the November 7, 1987 incident.

We, therefore, conclude that the trial court properly allowed Beverly Jo to bring an action against her father for the November 7, 1987 abuse and correctly rejected defendants' argument that the proper statutes of limitations for this incident were Iowa Code sections 614.1(2) and 614.8.

C. *Damages to Beverly Jo.* In determining damages for the plaintiff Beverly Jo, the trial court confined itself to the November 7, 1987 incident. The trial court awarded Beverly Jo $53,202 in actual damages for her medical expenses, past and future pain and suffering, and emotional distress. The court also awarded Beverly Jo $10,000 in punitive damages due to Richard's intentional act.

Richard argues that the court's damage awards are lacking in evidential support and are erroneously based on alleged incidents of abuse other than the November 1987 incident. Plaintiffs contend the damages are inadequate.

 We will not set aside or alter a judgment regarding damages unless it is (1) flagrantly excessive or inadequate, or (2) shocks the conscience or sense of justice, or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive, or (4) *lacks evidential support. Holmquist v. Volkswagen of America, Inc.,* 261 N.W.2d 516, 524 (Iowa App.1977) (emphasis added). In reviewing damage awards, we consider the evidence in the light most favorable to the plaintiff. *Ort v. Klinger,* 496 N.W.2d 265, 269 (Iowa App.1992).

 We conclude that the trial court's damage awards to Beverly Jo do not lack evidential support. The trial court concluded that Beverly Jo should have ongoing weekly psychotherapy sessions for several years at a charge of $166 per hour and a medical review on a quarterly basis at a charge of $54 a quarter. These medical expenses alone will total over $25,000. In addition, the trial court concluded that Beverly Jo has suffered and will suffer severe emotional distress, stating:

There was much testimony presented relating to Beverly Jo's emotional state. . . . Clearly in this case the pain and suffering Beverly Jo has endured is severe. She suffered sexual abuse in her bedroom as a child, which was so extreme that her mind involuntarily repressed any memories of it. She later had flashbacks of this abuse. She was subjected to the horrifying memories of what had occurred. As a result of this, Beverly Jo became severely traumatized as evidenced by her pattern of behavior. She is withdrawn, afraid of being alone, and afraid of men. It is difficult for her to endure physical contact with her husband and children, and she has had several bouts with suicidal attempts. Indeed, the ability for Beverly Jo to enjoy a normal life and pursue happiness for herself has been severely diminished.

With such findings of fact in mind, we conclude substantial evidence supported the trial court's award of $53,202 actual damages to Beverly Jo. Further, we reject Richard's argument that the trial court based its award on more than one act of sexual abuse, as the evidence supports the court's determination that the November 7, 1987 incident caused all of her awarded damages. We also reject Beverly Jo's assertion that the award is inadequate.

■ We also conclude that the court's award of punitive damages to Beverly Jo complied with the requirements of Iowa Code chapter 668A and the factors stated in *Ezzone v. Riccardi*, 525 N.W.2d 388, 399 (Iowa 1994). A preponderance of clear, convincing, and satisfactory evidence in the record shows that Richard's conduct was willful and in wanton disregard for Beverly Jo's rights. *See* Iowa Code § 668A.1(1)(a). Although the trial court did not explicitly make such a finding, willful and wanton disregard for Beverly Jo's rights is implicit in the nature of the act of sexual abuse Richard committed. Similarly, the fact that Richard's actions towards Beverly Jo were intentional necessarily implies that his conduct was directed specifically at her, causing the full $10,000 of punitive damages to be paid to Beverly Jo. *See id.* § 668A.1(1)(b) & (2)(a).

IV. *Beverly Jo's other claims of physical abuse.* In addition to the sexual abuse inflicted on Beverly Jo on November 7, 1987, Beverly Jo alleges several other incidents of physical abuse, including allegations that Richard touched her breasts, forced her to "nap" with him, and showered with her. For the reasons stated below, we agree with the trial court that Beverly Jo is not entitled to recover for these claims.

■ A. *Allegations of breast touching occurring in 1983 barred by Iowa Code sections 614.1(2) and 614.8.* Beverly Jo contends that she has a claim for an alleged incident occurring in 1983 when her father

played a game he called "tit twister" and touched her breasts. The trial court correctly found and concluded that Beverly Jo was aware of this incident and its abusive nature in 1987 and thus her failure to bring an action within the time limitations set forth in Iowa Code sections 614.1(2) and 614.8 bar her action.

Iowa Code section 614.1(2) provides an action may be brought for "[t]hose founded on injuries to the person or reputation, including injuries to relative rights, whether based on contract or tort, or for a statute penalty, within two years."

Iowa Code section 614.8 provides an additional year for minors:

The times limited for actions herein, except those brought for penalties and forfeitures, shall be extended in favor of minors and mentally ill persons, so that they shall have one year from and after the termination of such disability within which to commence said action.

■ As Beverly Jo's accusation of Richard touching her breasts would be a tort, her claim would fall within the scope of these statutes of limitations. However, the trial court found that she was aware of her alleged injury and its abusive nature at the latest in 1987 when she related the incident to hospital personnel. As previously mentioned, Beverly Jo reached her majority on September 20, 1989 when she married her husband Aaron. Accordingly, the statutes allowed her to bring her action for the breast touching one year from that date. She failed to do that; she did not bring the present action until November 20, 1991.[3] The trial court was thus correct in barring her battery claim for breast touching in 1983.

■ B. *Allegations of other physical abuse.* Beverly Jo alleges that she has had several other flashbacks in which she has remembered her father committing various acts of abuse against her. The trial court

---

**3.** In addition, even if Beverly Jo's allegations of breast touching constituted sexual abuse within the scope of the aforementioned Iowa Code section 614.8A, she could not bring her claim under that statute. In order to bring an action under that statute, the victim must not have "discover-

ed" the sexual abuse until reaching majority. *See* Iowa Code § 614.8A. As stated, Beverly Jo was aware of the alleged 1983 breast touching and its abusive nature in 1987, two years before she reached her majority.

failed to determine whether Beverly Jo could recover for these claims, confining its decision to the November 7, 1987 vaginal penetrating and the 1983 breast touching. It is well settled that an Iowa rule of civil procedure 179(b) motion is essential to preservation of error when a trial court fails to resolve an issue, claim, defense, or legal theory properly submitted to it for adjudication. *Estate of Grossman v. McCreary*, 373 N.W.2d 113, 114 (Iowa 1985). Beverly Jo did not meet this requirement because she failed to file a motion to enlarge or amend the findings of the trial court pursuant to rule 179(b). Accordingly, she has waived these issues on appeal.

 V. *Beverly Jo's claim of negligence against her mother Beverly.* Besides Beverly Jo's claims against her father, she also contends that her defendant mother, Beverly Whyle, had an affirmative duty to protect and defend Beverly Jo from harm, and was negligent when she failed to so defend and protect Beverly Jo from her father's abuse. She asserts the trial court erred in dismissing her petition against Beverly.

Regarding this claim, the trial court found as a fact that "Beverly Jo has failed to meet her burden of proof" and that "[t]here is no evidence [defendant Beverly] knew about the sexual abuse involving her husband in Beverly Jo's room." Because the trial court found as a *fact* that Beverly did not know about the November 7, 1987 incident, in order to prevail on appeal Beverly Jo would have to show as a matter of law that Beverly was negligent. *See Anthony v. State*, 374 N.W.2d 662, 664–65 (Iowa 1985). We conclude that she has failed to meet this burden. There is no merit to this assignment.

 VI. *Aaron's claim for loss of consortium.* In addition to Beverly Jo's claims for damages, her husband Aaron alleged that he is entitled to recover for loss of spousal consortium. Rejecting defendant Richard's argument that Aaron does not have the right to sue for loss of consortium for an injury that was actually inflicted upon his wife prior to their marriage, the trial court awarded

Aaron $7,500 for loss of spousal consortium. We disagree with the trial court's decision and conclude that Aaron does not have a valid claim for loss of spousal consortium.

In *Doe v. Cherwitz*, 518 N.W.2d 362, 364–65 (Iowa 1994),[4] we addressed the same issue presented here and chose not to allow "recovery for loss of consortium when the original act occurred prior to marriage [even though] the damage was not discovered until afterward." *Id.* at 365. We reasoned that:

> The discovery rule anticipates that the claimant had a valid cause of action within the period of limitations, but for some reason, was unaware of it. Here, because there was no marital relation between [the parties], there was no cause of action within the period of limitations, and the discovery rule cannot create one when none had ever existed during the period of limitations.

*Id.* (citation omitted).

In the present case, Aaron and Beverly Jo were not married until September 20, 1989, approximately two years after Richard "actually" sexually abused Beverly Jo on November 7, 1987. Without a marital relationship on November 7, 1987, Aaron did not have a right to bring an action for spousal consortium at that time. *See Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 167 (Iowa 1984). Accordingly, the discovery rule is inapplicable, leaving Aaron without an action for loss of consortium. *See Cherwitz*, 518 N.W.2d at 365. The court should have dismissed Aaron's claim.

VII. *Conclusion.* We have considered all other contentions and arguments made on the appeal and cross-appeal, whether or not specifically addressed in this opinion, and either find error not preserved or no merit to those assignments.

We affirm the judgment of the district court relating to plaintiff Beverly Jo Claus' claims for damages against defendant Richard Whyle and its dismissal of the petition against defendant Beverly Whyle. We reverse the judgment relating to plaintiff Aaron Claus' claim for loss of consortium. The

---

4. In fairness to the district court, we note that *Doe v. Cherwitz* had not yet been decided when

the district court entered judgment in the present case.

case is remanded for entry of judgment consistent with this opinion. Costs shall be taxed one-half to appellant Richard Whyle and one-half to appellees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**