Philip H. SWARTZENDRUBER,
Appellant,

v.

Mel SCHIMMEL and Holiday Foods,
Employer, and State Farm Insurance,
Insurance Carrier, Appellees.

No. 98–1998.

Supreme Court of Iowa.

June 1, 2000.

Mary K. Hoefer of Mears Law Office, Iowa City, for appellant.

James M. Peters and Allison M. Heffern of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellees.

CADY, Justice.

In this action for workers' compensation, we review a decision by the court of appeals reversing a decision by the district court which affirmed summary judgment entered by the industrial commissioner based on a failure of the employee to file a petition for benefits within two years of the injury. We vacate the decision of the court of appeals and affirm the district court.

## I. Background Facts and Proceedings.

Philip Swartzendruber has had a long history of serious hip problems. He has Legg–Calvé–Perthes disease which resulted in a total replacement of his left hip in 1985. He was twenty-nine years old at the time. Swartzendruber walks with a limp and has had hip and back pain for years.

On January 7, 1994, Swartzendruber was employed by a grocery store in North Liberty called Mel's Holiday Foods. He worked from 3:00 p.m. to 9:00 p.m. As a part of his job duties, Swartzendruber was required to stock and face the grocery shelves. This required him to place products from the stockroom on the shelves and move the products on the shelves from the back to the front of the shelves. At times, it was necessary for Swartzendruber to perform the work while on his hands and knees. By the time his work shift ended, Swartzendruber was experiencing pain in his hip and back. The pain was more intense than he had experienced for some time. Notwithstanding, he went to a local tavern after leaving the grocery store for a period of time before retiring to his home for the evening.

Following a restless night, Swartzendruber awoke early in the morning on January 8 with intense pain in his back and hip. He struggled to walk. It was Saturday, and Swartzendruber was not scheduled to return to work until Monday, January 10. Swartzendruber promptly went to the emergency room at the University of Iowa Hospitals.

Swartzendruber was examined at the hospital by a doctor and x-rays were taken of his back and hip. The emergency room doctor told Swartzendruber the x-rays showed his artificial hip socket was loose. Swartzendruber was then released from the hospital with instructions to see his orthopedic specialist for further evaluation.

Swartzendruber telephoned his employer on January 8 after returning home from the hospital and informed him of his injury. He also told his employer he did not know if his condition would allow him to report to work on Monday. At the time, Swartzendruber understood the nature of the injury and believed it was related to his work on January 7. However, he claimed he did not understand the seriousness of his injury and did not know if it would actually require him to miss work.

Swartzendruber did not report to work on Monday. In fact, he never returned to work at the grocery store. He was examined by his orthopedic physician on January 13, who informed him that his hip would require surgery. He was also told he may not fully recover from the condition. On the same day, Swartzendruber called his employer and reported his condition as a work injury. Swartzendruber understood his condition was serious at this time.

Mel's Holiday Foods filed a first report of injury. Swartzendruber, however, was not paid weekly benefits.

Swartzendruber filed a petition for workers' compensation benefits with the industrial commissioner on January 11, 1996. Mel's Holiday Foods filed a motion for summary judgment. It asserted Swartzendruber's petition was filed more than two years after the injury and was beyond the statute of limitations under Iowa Code section 85.26(1) (1995).

The industrial commissioner granted summary judgment and dismissed the petition. It determined Swartzendruber failed to file his petition for benefits within two years from the time of his injury. The commissioner found Swartzendruber knew he had a work-related injury on January 7, 1994, and should have known it was serious after he sought medical treatment the following day on January 8, 1994.

Swartzendruber filed a petition for judicial review in the district court. He claimed the statute of limitations did not begin to run until January 13, 1994, when he was examined by the orthopedic specialist and learned that his condition would require surgery.

The district court affirmed the decision of the industrial commissioner. Swartzendruber then filed this appeal. We transferred the case to the court of appeals. The court of appeals reversed the district court. It found summary judgment was improper because there was evidence to support a finding that Swartzendruber did not know of the seriousness of his injury, in view of the pre-existing hip problems which had caused him intermittent pain in the past, until the orthopedic surgeon told him he needed hip surgery. We granted further review.

## II. Scope of Review.

A decision to grant summary judgment is reviewed for errors of law. *Iowa Tel. Ass'n v. City of Hawarden*, 589 N.W.2d 245, 250 (Iowa 1999). It is appropriate where the moving party shows no genuine issue of material fact and it is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). We review the record in a light most favorable to the non-moving party. *Wright v. American Cyanamid Co.*, 599 N.W.2d 668, 670 (Iowa 1999). Summary judgment is inappropriate if reasonable minds would differ on how the issue should be resolved. *Keystone Elec. Mfg. v. City of Des Moines*, 586 N.W.2d 340, 345 (Iowa 1998). However, where the evidence compels only one reasonable conclusion, the question presented is one of law. *See Brammer v. Allied Mut. Ins. Co.*, 182 N.W.2d 169, 172 (Iowa 1970); *Dailey v. Holiday Distrib. Corp.*, 260 Iowa 859, 874, 151 N.W.2d 477, 487 (1967); *see also Schmitz v. Crotty*, 528 N.W.2d 112, 115 (Iowa 1995) (reasonableness of attorney's conduct ordinarily a question of fact, but where facts so compelling that no conflicting inferences available, then whether attorney performed duty is decided as a matter of law by the court).

## III. Statute of Limitations.

█ A petition for benefits under our workers' compensation statute must be filed "within two years from the date of the occurrence of the injury for which benefits are claimed." Iowa Code § 85.26(1). The purpose of the statute of limitations in workers' compensation cases is the same as in other types of cases. It provides protection for both the claimant and the employer. It gives the claimant time to investigate the claim and establish grounds to file a petition. *See LeBeau v. DiMig*, 446 N.W.2d 800, 803 (Iowa 1989). It provides the employer reasonable closure to potential liability for actions. *See id.* at 802–03; *see also* 51 Am.Jur.2d *Limitations of Actions* § 17, at 602–03 (1970).

### A. Discovery Rule.

█ We have interpreted section 85.26(1) to mean the injury occurs when it is discovered. *Ranney v. Parawax Co.*, 582 N.W.2d 152, 154 (Iowa 1998). This discovery rule is necessary because some injuries are not immediately known. *See Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d

256, 258–61 (Iowa 1980). The rule means the two-year limitation period does not begin to run until the employee discovers, or should discover in the exercise of diligence, the nature, seriousness, and probable compensable character of the injury or disease. *Ranney*, 582 N.W.2d at 154. Under this discovery rule, the claimant must have actual or imputed knowledge of all three characteristics of the injury or disease before the statute begins to run. *Id.* at 154–55.

We have identified two types of late-discovered injuries. *LeBeau*, 446 N.W.2d at 802. The first type is a pure latent injury. *Id.* This involves cases where the claimant is unaware of the injury or its cause until some time after the occurrence. *Id.* The second type of late-discovered injury involves a known traumatic event which produces both an immediately known injury and latent injury. *Id.* It is called "traumatic event/latent manifestation." *Id.*

 The statute of limitations under section 85.26(1) does not begin to run for a pure latent injury until the injury is discovered. *Id* . Under the second group of late-discovered injuries, the statute of limitations begins to run from the initial injury, not when the injury is later discovered. *Id.* The discovery rule is actually applied to both groups of late-discovered injuries, but only to the first injury in "traumatic event/latent manifestation" cases.

In this case, Swartzendruber claims a pure latent injury.[1] He also acknowledges it occurred on January 7, 1994. However, he asserts the statute of limitations did not begin to run under the discovery rule until January 13, 1994, because the seriousness component of the rule was not satisfied until he met with the orthopedic surgeon on that date and was told surgery would be necessary. He does not challenge the nature and probable compensability character components of the discovery rule.

 Under the imputed knowledge prong of the discovery rule, the statute of limitations begins when a claimant gains information sufficient to alert a reasonable person of the need to investigate. *Ranney*, 582 N.W.2d at 155. Thus, a claimant's knowledge is judged under the test of reasonableness. The need to investigate arises when a reasonable person has knowledge of the *possible* compensability of the condition. *Id.* This knowledge must include all three characteristics of the condition. As of that date, the duty to investigate begins and the claimant has imputed knowledge of all the facts that would have been disclosed by a reasonable diligent investigation. *Id.* Thus, a claimant has two years from that time to gather the facts and file a petition. *Id.* at 157.

## B. Knowledge of Seriousness of Injury.

 The seriousness component of the discovery rule exists so that "every minor ache, pain, or symptom" does not begin the statute of limitations. 2B Arthur Larson, *Workers' Compensation* § 78.41(e), at 15–279 (1994). Thus, the failure to file a claim within two years of the occurrence of the injury may be excused if the claimant had no reason to believe the condition was serious. *See id.* at 15–281. If the injury is trivial or minor, or the symptoms indicate no serious trouble, the seriousness component is not met. *See id.*

 On the other hand, exact knowledge of the seriousness of an injury is not required. *See Ranney*, 582 N.W.2d at 155. Furthermore, an expert medical opinion is not needed to establish knowledge of the characteristics of the injury. *See id.* Instead, the duty to investigate begins once the claimant is aware of the problem. *Id.* Under this standard, the

---

**1.** Schwartzendruber makes no claim that this injury is compensable as an aggravation of a

pre-existing injury or a cumulative trauma.

degree of knowledge is based upon a possibility, not a probability. *Id.* Thus, if it is reasonably possible an injury is serious enough to be compensable as a disability, the seriousness component of the test is satisfied.

■ The legal resolution of the question of what constitutes recognition of the seriousness of an injury or disease is a fact specific inquiry. *See Dillinger v. City of Sioux City,* 368 N.W.2d 176, 182 (Iowa 1985). The facts, however, must satisfy the test of reasonableness.

■ Under the test of reasonableness, we refrain from pinpointing any specific event to establish the seriousness of an injury, such as going to a physician or missing work. Although these events are relevant, we consider all the facts and circumstances in resolving the issue.

We agree with Swartzendruber there is evidence that a reasonable person on January 7, 1994, may not have known the injury was serious enough to be compensable. A reasonable worker would not necessarily be charged with knowledge of a compensable injury after experiencing back or hip pain following work which required bending. This is especially true for a worker, like Swartzendruber, who has encountered hip and back pain in the past but was able to continue work. The record also indicates Swartzendruber was able to complete his work assignment and go to a bar after leaving work. However, the absence of the seriousness component of the discovery rule on January 7, 1994 does not mean Swartzendruber did not have imputed knowledge of the seriousness of his injury until he was examined on January 13, 1994 by the orthopedic surgeon.

■ ■ Swartzendruber experienced intense pain and had a difficult time walking on January 8. His condition was serious enough for him to seek medical attention at an emergency room of a hospital on that date. He was also told by a doctor that his artificial hip was loose and he needed to see his orthopedic specialist.

This type of information is entirely consistent with the possibility of a serious injury. When a worker is referred to a specialist by an examining physician, the specialist is not required to confirm the seriousness of an injury before knowledge of the seriousness of the injury may be imputed to the worker.

Nevertheless, Swartzendruber argues he cannot be charged with the knowledge of a serious injury on January 8 because he reported to his employer that he was uncertain if he would be able to report to work. He points out this statement reflects knowledge of the possibility that the injury was not serious enough to miss work. However, this uncertainty also reflects the possibility the injury was serious enough to prevent him from working. Accordingly, Swartzendruber's argument is actually consistent with the duty to investigate.

Considering all the facts in a light most favorable to Swartzendruber, we agree with the district court that a reasonable person would have knowledge of all three components of the discovery rule on January 8, 1994. The evidence presented by Swartzendruber in response to the motion for summary judgment did not generate a contrary finding.

The petition filed on January 11, 1996 was untimely. We vacate the decision of the court of appeals and affirm the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**